UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2023

(Argued: October 25, 2023     Decided: June 18, 2024)

Docket No. 22-1207

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

DENNIS A. BRADLEY, JR.,
JESSICA MARTINEZ,
*Defendants-Appellees.*

———————————

Before:      SACK AND PÉREZ, *Circuit Judges*.[*]

The defendants-appellees Dennis A. Bradley, Jr., and Jessica Martinez were charged with, *inter alia*, wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 1343 in connection with Bradley's 2018 campaign for Connecticut state senator.

As part of its investigation into the allegations, the government interviewed and acquired from Linda and Barry Jackson, videographers who had been hired by Bradley, a 13-minute and a 28-minute video of an event held at Dolphin's Cove restaurant in Bridgeport, Connecticut on March 15, 2018, at which Bradley announced his campaign. Although the Jacksons provided the 13-minute video to the government in 2021—and the government timely provided that video to the defendants-appellees—the government did not definitively know of the existence of or come into possession of the 28-minute video until May 24, 2022, less than one week before the then-calendared commencement of trial.

---

[*] Judge José A. Cabranes, who was a member of the panel, recused himself following oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

In an attempt to comply with its evidentiary disclosure obligations, including those provided by Federal Rule of Criminal Procedure 16(a)(1)(E) and the Connecticut District Court's Standing Order on Discovery, the government provided the 28-minute video to the defendants-appellees on May 25, 2022. Bradley moved to preclude the 28-minute video on the grounds that the government had violated Rule 16(a)(1)(E) by failing to obtain and produce the video at an earlier date. In an oral ruling on June 2, 2022, the United States District Court for the District of Connecticut (Victor A. Bolden, *J.*) granted that motion and expounded on its reasoning in a Supplemental Memorandum issued July 1, 2022, weeks after the government had filed its notice of appeal.

The government's appeal contests the district court's determination that the government violated its disclosure obligations, arguing that it did not have the 28-minute video in its possession, custody, or control until May 24, 2022, the eve of trial. For the reasons set forth below, we

> REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.

JONATHAN N. FRANCIS (David E. Novick, Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellant*;

ALEXANDER T. TAUBES (James I. Glasser, David R. Roth, Wiggin and Dana LLP, New Haven, CT, *on the brief*), *for Appellee Dennis A. Bradley, Jr.*;

DANIEL ERWIN, Assistant Federal Defender, *for* Terence S. Ward, Federal Defender, District of Connecticut, Hartford, CT, *for Appellee Jessica Martinez.*

SACK, *Circuit Judge*:

In connection with defendant-appellee Dennis A. Bradley, Jr.'s 2018 campaign for the Connecticut state senate, the government charged Bradley and his campaign treasurer, defendant-appellee Jessica Martinez, with wire fraud, conspiracy to commit wire fraud, and with respect to Martinez only, making false statements and false declarations before the grand jury. The government alleges that in an application to receive state-funded campaign grants, the defendants-appellees knowingly made false affirmations that they had complied with all campaign-related state statutes and regulations and failed to report certain campaign-related expenditures as required by state law. In connection with its investigation into Bradley's campaign, the Federal Bureau of Investigation ("FBI") interviewed videographers Linda and Barry Jackson (the "Jacksons") who had been contracted by Bradley to record an event at Dolphin's Cove restaurant in Bridgeport, Connecticut (the "Dolphin's Cove event"). In response to a grand jury subpoena to produce all video footage of the Dolphin's Cove event, the Jacksons turned over a 13-minute video titled "raw footage."

On the eve of trial, following a subsequent interview with the videographers, the government acquired from them and produced to the

3

defendants-appellees a second, 28-minute video of the event. The government explained that it intended to use this 28-minute video to prove that the defendants-appellees knowingly made misrepresentations to the Connecticut State Election Enforcement Commission, the FBI, and the grand jury, in each case with criminal intent to commit conspiracy, wire fraud, false statements, and perjury.

Following a motion by Bradley to preclude the video, the United States District Court for the District of Connecticut (Bolden, *J.*) ordered that the government be precluded from entering the 28-minute video into evidence, also barring its introduction by the defendants-appellees. The district court determined that in failing to come into possession of, and to turn over to the defendants-appellees, the 28-minute video earlier, the government had violated Federal Rule of Criminal Procedure 16(a)(1)(E) and the District Court's Standing Order on Discovery Appendix ¶ (A)(1)(f) (the "Standing Order"). The government appeals the order of preclusion.

We determine principally that the government violated neither Rule 16(a)(1)(E) nor the Standing Order inasmuch as it did not have possession, custody, or control of the video until the day before it produced the video to the defendants-appellees. For the reasons set forth in further detail below, we

4

therefore REVERSE the district court's order to preclude the 28-minute video and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

On March 15, 2018, the defendants-appellees Dennis A. Bradley, Jr. and Jessica Martinez hosted an event at the Dolphin's Cove restaurant in Bridgeport, Connecticut. At the Dolphin's Cove event—nominally a party for the BDK Law Group where Bradley, an attorney, was then a partner—Bradley announced his candidacy for Connecticut state senate.[1] Martinez would serve as Bradley's campaign treasurer during this campaign. In connection with the event, Bradley contracted the Jacksons, owners of a company named "Victory Productions," to record the event "for promotional purposes." Bradley's Br. at 8. The event cost Bradley roughly $7,000.

Following the event, the defendants-appellees applied to the Connecticut State Election Enforcement Commission (the "SEEC") for Citizens' Election Program ("CEP") grants in amounts equal to approximately $180,000 to fund Bradley's senate campaign. In so doing, the defendants-appellees affirmed that

---

[1] Bradley ultimately won the state senate election. He served as a Connecticut state senator from January 2019 to January 2023. *Dennis Bradley*, BALLOTPEDIA, https://ballotpedia.org/Dennis_Bradley (last accessed June 14, 2024).

Bradley's campaign complied with state laws and regulations governing the CEP, including those governing the treatment and reporting of campaign expenses. The government now contends that the affirmations made on this application were false because the defendants-appellees knew that they had improperly failed to report the $7,000 spent on the Dolphin's Cove event as a campaign expense. Additionally, the government alleges that the defendants-appellees: (1) lied on their grant application insofar as they altered contribution dates to conceal that contributions were made at the Dolphin's Cove event; and (2) in connection with the SEEC's investigation into Bradley's campaign, stated that the Dolphin's Cove event "was in no shape or form a political event" and the campaign "did not collect any donations at th[e] event." Gov. App'x at 56.

In connection with its investigation of Bradley's campaign, the FBI interviewed the Jacksons on January 27, 2020. During this meeting, the Jacksons told the FBI that they had approximately two hours of footage of the Dolphin's Cove event, "and an edited, shorter version." Gov. App'x at 493. Following this interview with the FBI and a grand jury subpoena of the Jacksons by the government, the Jacksons executed a "Certificate of Records" which stated that their company had "video footage of [the] event at Dolphin's Cove on 3/15/18."

*Id.* The Jacksons then produced three videos to the FBI, including one unedited video from the Dolphin's Cove event which contained 13 minutes of footage and was titled "BDK 2018 RAW FOOTAGE .MTS." Gov. App'x at 494.

On May 24, 2021, a grand jury indicted the defendants-appellees on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, five counts of wire fraud in violation of 18 U.S.C. § 1343, and, with respect to Martinez only, one count of false statements in violation of 18 U.S.C. § 1001(a)(2) and one count of false declaration before the grand jury in violation of 18 U.S.C. § 1623. The defendants-appellees were arrested and pleaded not guilty to the charges.

On May 2, 2022, all parties stated in a pre-trial conference that they were ready for trial, and the district court scheduled a final pre-trial conference for May 25, 2022, with jury selection to begin on May 31, 2022 and trial to begin immediately thereafter. Later that day, counsel for Bradley wrote to the government asking that the government "advise if [it had] in its possession an unedited version of the video of the event at the Dolphin's Cove restaurant" and, if so, to produce that video. Gov. App'x at 500. The government replied on May 4, 2022, that it had produced "the raw footage of the 3/15/18 video," referring to the 13-minute video it had previously provided. Gov. App'x at 494–95. The

government filed a Superseding Indictment, charging the defendants-appellees with the same counts as in the original Indictment, on the same day.

The FBI interviewed the Jacksons again on May 9 about other documents. The Jacksons did not explicitly mention or allude to the existence of any longer video of the Dolphin's Cove event.

Following the addition of the 13-minute video to the government's exhibit list and Bradley's objection questioning the foundation for it, the FBI once again interviewed the Jacksons on May 24, 2022, in an effort to authenticate that video. Later that day, the Jacksons, for the first time, produced to the government the 28-minute video. According to the assistant U.S. attorney involved in the prosecution, it depicts "people waving around contribution forms. Someone almost hits Mr. Bradley in the head with a contribution form." Gov. App'x at 460. The government contends that this video shows that, among other things, the defendants-appellees knew contributions for Bradley's campaign were solicited at the Dolphin's Cove event, and that the event was therefore related to his campaign.

The district court held a final pre-trial conference on the following morning, May 25, 2022. During this conference, the government disclosed that it had then-

recently learned of an additional 28-minute video, and produced it later that day.

On June 1, following a day of jury selection and on the eve of trial, Bradley orally moved to preclude the 28-minute video on the basis that the government had violated Federal Rule of Criminal Procedure 16 with its production of the video and supported his motion with briefing. The district court suspended jury selection until June 3, 2022, in order to consider the parties' arguments and held a telephonic conference on June 2, 2022 at 11:00am in that regard.

During that conference, the district court made several statements regarding the admissibility of the 28-minute video, among them that the government should proceed on the basis of the 13-minute video, that the longer video might only be received in evidence if the defendants-appellees "open[ed] the door" and "put the video at issue," and that the district court had "sufficient authority to issue that order." Gov. App'x at 507–08. When asked by the government whether the video was, in fact, precluded, the district court responded "Yes, as it stands." Gov. App'x at 512. The district court also explained that the video was not "precluded . . . from coming in, and there are a number of circumstances under which it may come in," but in the interest of expediency, the district court wished to avoid spending the day "writ[ing] something." Gov. App'x at 518–19. The district court

also requested that the parties submit both videos in order to determine what might "open[] the door." Gov. App'x at 507.

The government filed its notice of interlocutory appeal later that day, challenging the district court's oral order granting the defendants-appellees' motion to preclude the 28-minute video. In a telephonic conference that evening, counsel for the defendants-appellees objected to the appeal as taken in bad faith, and counsel for Martinez requested that the district court make factual findings on this point. The government objected, arguing that the district court could not make factual findings inasmuch as it had been divested of its jurisdiction once the notice of appeal was filed. The district court requested briefing on this matter, and the parties filed responsive memoranda on June 3, 2022.

The government provided a copy of the 28-minute video to the district court on June 3, 2022. During a telephonic conference held later that day, Martinez moved to sever her case from Bradley's case and to dismiss the charges against her. Bradley requested that the district court issue a written order memorializing its June 2 oral ruling on his motion to preclude the 28-minute video. On July 1, 2022, the district court issued a Supplemental Memorandum, providing greater detail regarding its order to preclude the video.

# DISCUSSION

I.  This Court's Jurisdiction.

The defendants-appellees first argue that this Court lacks jurisdiction to hear this appeal under 18 U.S.C. § 3731, which sets forth several of the limited circumstances under which the federal government may appeal an order of the district court in a criminal matter without violating principles of double jeopardy. *See United States v. Hoskins*, 902 F.3d 69, 76 (2d Cir. 2018) (explaining that 18 U.S.C. § 3731 may confer appellate jurisdiction upon this Court). They assert that the district court did not order the video to be precluded during the June 2, 2022, hearing—or, at most, the preclusion order was conditional—and the government's appeal later that day was therefore untimely. We conclude that this argument is without merit; the district court's pronouncements during the June 2 hearing were sufficiently definite to constitute an appealable order within the "broad" meaning of Section 3731. *United States v. Horwitz*, 622 F.2d 1101, 1104 (2d Cir. 1980).

Section 3731 provides in relevant part that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . in a criminal proceeding, not made after the defendant

has been put in jeopardy and before the verdict or finding on an indictment or information." 18 U.S.C. § 3731.

The statute instructs that "[t]he provisions of [Section 3731] shall be liberally construed to effectuate its purposes." *Id.* "[T]hose purposes certainly include permitting the government to appeal immediately from adverse pretrial rulings suppressing or excluding evidence." *Horwitz*, 622 F.2d at 1104. To hold otherwise would lead to absurd and unwanted results. For example, if a district court wrongly decides against the government on an evidentiary matter, the government is not able to appeal, and the defendant is then tried and acquitted, the government is left with no recourse to correct the error. Retrying the defendant after an acquittal following, *inter alia*, the exclusion of admissible evidence offered by the government would violate the Double Jeopardy Clause of the Fifth Amendment.

Whether or not a district court issues an appealable order is a question of "[s]ubstance, not form." *Id.* at 1105. "[A] careful examination of the precise facts is necessary." *Id.* The facts of this case require us to conclude that during the June 2 hearing the district court did indeed order that the video be precluded such

that the government's appeal was permitted by Section 3731.  This Court therefore has jurisdiction over this appeal.

The defendants-appellees contend that during the June 2 hearing, the district court's "oral pronouncements were at most a tentative ruling, subject to further clarification and reconsideration" that "could change as the trial progressed," and was therefore outside the scope of Section 3731.  Bradley's Br. at 34 (internal citation omitted).  We have held, however, that when a district court states in a pre-trial hearing that it will "in all probability" "grant a defense motion to suppress . . . testimony," that statement is definite enough to constitute an appealable order.  *See Horwitz*, 622 F.2d at 1105.  "It would be an exercise in pure formalism to hold that the district court's order [was] not appealable at th[at] juncture."  *Id.*

Here, the district court gave the parties more.  In that June 2 hearing, the district court "wanted to let the parties know as soon as possible where [its] head [was]."  Gov. App'x at 505–06.  The district court would view both videos in full and "look at whatever the government want[ed] to file," Gov. App'x at 506, but asserted that "the government's case should proceed on the basis of the 13-minute version of the video" and "urge[d] everyone to prepare accordingly," Gov. App'x

at 507, as trial was set to begin the following day. When asked directly by the government whether the video was precluded, the district court responded, "Yes, as it stands." Gov. App'x at 512.

To be sure, the district court also stated that the video was not "precluded . . . from coming in, and there are a number of circumstances under which it may come in." Gov. App'x at 518. But context matters: In so stating, the district court clarified that this was not a "blanket ruling," *id.*; if, say, the defendants-appellees inadvertently introduced the video—by, for example, describing the occurrence or non-occurrence of events that could be rebutted by the introduction of the 28-minute video—the government would be entitled to admit that video into evidence. To summarize its position, the district court explained that it "ha[d] sufficient authority to issue that order, and [thought] it [was] sufficiently fair to everyone," Gov. App'x at 508, mentioning several times the intended consequences of "this ruling," *see* Gov. App'x at 511, 522. It further explained that the point of these statements—and the oral order—was to avoid spending the eve of trial "writ[ing] something." Gov. App'x at 519.

The district court in the present case did far more than did the district court in *Horwitz*. Here, the district court did not state that the video would be precluded

14

only under certain circumstances or if certain conditions were met. Rather, it signaled its intent to preclude the video and explained only that its preclusion may be overcome if the defendants-appellees—who sought its preclusion in the first instance—took certain actions at trial.[2]

Viewing these facts with Section 3731's "broad mandate" in mind, *Horwitz*, 622 F.2d at 1104, we conclude that the district court's pronouncements in the June 2 hearing demonstrate the court's intent to preclude the video at that time, thereby constituting an appealable order within the meaning of the statute. As we therefore have jurisdiction to hear this appeal, we turn to the government's contention that the district court erred in granting the defendants-appellees' motion to preclude the video.

## II.  The District Court's Ruling.

A.  The District Court's Supplemental Memorandum

As a threshold matter, the government argues that the Supplemental Memorandum analysis relies on facts impermissibly found by the district court to

---

[2] The defendants-appellees rest much of their argument on this point on a case out of the First Circuit: *United States v. Watson*, 386 F.3d 304, 311 (1st Cir. 2004). Though not authoritative here, we note that our decision here is consistent with that one inasmuch as the district court's pronouncements should be construed as a "case-management order[ that has] the direct effect of excluding evidence and, thus, can be immediately appealed by the government in a criminal case." *Id.*

determine that the government violated Rule 16 and the Standing Order. The government suggests that any facts found by the district court for the first time in the Supplemental Memorandum, issued after the government filed its notice of appeal, should not have been considered in assessing whether a violation occurred.

We have held that "[a] notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," but the district court may still "correct[] clerical errors [or] . . . act[] to aid the appeal." *United States v. Ransom*, 866 F.2d 574, 575–76 (2d Cir. 1989) (internal quotation marks and citations omitted). However, a district court "err[s] by engaging in factfinding after notice of appeal has been filed." *United States v. Katsougrakis*, 715 F.2d 769, 776 (2d Cir. 1983).

Here, however, we need not concern ourselves with whether the district court made findings of fact, clearly erroneous or otherwise, after it had been divested of its jurisdiction. Even taking virtually all the factual findings in the district court's Supplemental Memorandum as permissibly found and true, we still must conclude that the government did not violate Rule 16(a)(1)(E) or the Standing Order when it failed to procure and provide to the defendants-appellees

16

the video before May 25, 2022. We therefore do not decide whether the district court erred in this respect, and instead move on to the merits of the claim.

B.  Standard of Review and Relevant Law

The government asserts that the district court erred in determining that the government had violated Rule 16(a)(1)(E) and the Standing Order.

"[This Court] review[s] *de novo* a district court's interpretation of the Federal Rules of Criminal Procedure." *United States v. Rojas*, 617 F.3d 669, 677 (2d Cir. 2010). In contrast, this Court "accord[s] substantial deference to a district court's interpretation of its own local rules." *In re Kandekore*, 460 F.3d 276, 278 (2d Cir. 2006); *see also LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (stating that "the district court's interpretation and application of its own local rule . . . [is a decision] to which we must accord considerable deference."). "However, an error of law is generally considered an abuse of discretion." *In re Kandekore*, 460 F.3d at 278.

We review findings of fact for clear error. *See United States v. Peeples*, 962 F.3d 677, 684 (2d Cir. 2020). "A finding of fact is clearly erroneous only if, after reviewing all of the evidence, this Court is left 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Cramer*, 777 F.3d

597, 601 (2d Cir. 2015) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573

(1985)).[3]

The district court's Supplemental Memorandum explained that the

government violated both Rule 16 and the Standing Order. Rule 16(a)(1)(E)

provides in relevant part that:

> the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Paragraph (A)(1) of the Standing Order explains that the government must

provide to the defendant those same items that are "within the government's

possession, custody or control, the existence of which is known or by the exercise

of due diligence could be known to the attorney for the government."

C.    Analysis

---

[3]  The district court did, indeed, make at least one clearly erroneous factual finding. In its Supplemental Memorandum, the court referred to a May 17, 2022, interview during which the government definitively learned of the existence of the 28-minute video. One of the district court's conclusions—that the government violated its continued disclosure obligations—rests on this fact, as the government did not turn over the video until May 25. However, neither party disputes, and the record reflects, that there was no May 17 interview. Rather, both parties concede that the government definitively learned of the existence of the video on May 24 when the Jacksons provided it to the government. We therefore do not give any credence to this erroneous finding of fact. *See Peeples*, 962 F.3d at 684.

In granting the defendants-appellees' motion to preclude the video, the district court held that the government had violated Rule 16 and the Standing Order by failing to acquire and produce to the defendants-appellees the 28-minute video earlier. We reverse the district court's preclusion order, finding neither a Rule 16(a)(1)(E) nor a Standing Order violation, and remand for further proceedings consistent with this opinion. In so doing, we hold that neither Rule 16(a)(1)(E) nor the Standing Order impose a requirement upon the government to discover and turn over to a criminal defendant evidence that the government: (1) does not have in its *physical* possession, custody, or control; or (2) does not have a duty to obtain from a third party.

### 1. The government did not violate Rule 16(a)(1)(E).

The government asserts, and the record reflects, that the government did not know of the existence of the 28-minute video, nor did it possess that video, before May 24. The government concludes, therefore, that the 28-minute video was not possessed, controlled, or in the custody of the government such that the government was required by Rule 16 to turn it over to the defendants-appellees before that date. We agree.

In the June 2 hearing and in its Supplemental Memorandum, the district court held that because the government *could have* had reason to suspect the video existed based upon statements made by the Jacksons in earlier interviews, it was required by Rule 16 to acquire and turn over that video to the defendants-appellees. In so concluding, the district court relied heavily on *United States v. Matthews*, 20 F.3d 538 (2d Cir. 1994). In *Matthews*, however, we held that the government is *not* obligated to disclose evidence when it is "in the hands of a person who is not a government agent and the government has no reason to suspect that the evidence exists." 20 F.3d at 550. That holding did not expand the scope of Rule 16(a)(1)(E) to require the inverse—that when the government has a reason to suspect evidence exists, it has an affirmative obligation to disclose that evidence to defendants.

In fact, the text of Rule 16(a)(1)(E) plainly requires only that the government turn over evidence if the piece of evidence "is within the government's possession, custody, or control" or that of its agent, *and* "the item is material to preparing the defense; . . . the government intends to use the item in its case-in-chief at trial; or

. . . the item was obtained from or belongs to the defendant."[4]  There is no constructive possession concept or due diligence requirement.[5]

Here, neither any party nor the district court contests that the government lacked *physical* possession and custody, and control of a copy of the video before May 24, 2022.  *See* Gov. App'x at 604 ("On May 24, the FBI obtained from Mr. and Ms. Jackson a 28-minute version of the video of the Dolphin's Cove event.").  The Jacksons are not government agents such that their possession of the video implicated any Rule 16 requirement.[6]  Nor does the government's knowledge that the video *might* exist create any Rule 16(a)(1)(E) obligation to obtain and produce the video.[7]

We agree with those of our sister courts which have concluded that where the government does not have physical custody, possession, or control over (or an

---

[4] The government stated that it intended to use this piece of evidence in its case-and-chief.

[5] District courts in this Circuit have held that the government has "control" over a piece of evidence if it has agreed with a third party that it has a right to obtain that evidence.  *See, e.g.*, *United States v. Stein*, 488 F.Supp.2d 350, 363 (S.D.N.Y. 2007) (deferred prosecution agreement which required turnover of evidence gave government "control" of such evidence).  Because no such agreement existed here between the Jacksons and the government, we need not examine this line of cases.

[6] The Jacksons were indeed hired by and communicated with Bradley.  Although not integral to our decision here, this eases concerns regarding informational asymmetry in favor of the government.

[7] In the present case, the FBI *did* subpoena the Jacksons to turn over any videographic evidence they possessed of the Dolphin's Cove event—as is now clear, the Jacksons did not fully comply with this subpoena.  Thus, even if a due diligence requirement did exist, the government could not have done significantly more than it did to acquire the video from the Jacksons.

21

agreement to receive evidence), Rule 16(a)(1)(E) does not require the government to obtain and turn over that piece of evidence. *See, e.g.*, *United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000) (holding that the government's failure to turn over photographs did not constitute a violation of Rule 16 because the government did not receive photographs from a third party when requested); *United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) ("[T]he government does not have a duty to disclose items it does not possess. Nor does it have a duty to obtain evidence it does not possess." (internal citation omitted)).

Once the government came into possession of the 28-minute video on May 24, it promptly provided the defendants-appellees with the video the following day, fulfilling its obligation—including its continued disclosure obligation—to permit the defendants-appellees to timely inspect the video. The government cannot be said to have violated Rule 16 simply because it did not possess and then turn over a video it did not even know existed. The district court erred in holding otherwise, based on an interpretation of Rule 16(a)(1)(E) that would require the government to go to great, possibly inexhaustible, lengths to acquire evidence that it may wish to use at trial if it thinks there is just a chance that such evidence exists.

*2. The government did not violate the Standing Order.*

The government further asserts that its failure to acquire and produce to the defendants-appellees the video did not violate the Standing Order, contrary to the district court's view.[8] The language contained in the Standing Order largely mirrors the language contained in Rule 16(a)(1)(E), but the defendants-appellees contend that the inclusion of an additional clause in the Standing Order impose on the government a due diligence requirement that the government did not satisfy. We disagree.

The Standing Order provides that the government must furnish to the defense specified items, including certain videographic evidence, "within the government's possession, custody, or control, the existence of which is known or by the exercise of due diligence could be known to the attorney for the government." Standing Order ¶ (A). The defendants-appellees suggest that the final clause of that sentence imposes a requirement on the government to turn over relevant pieces of evidence that are *either* in the government's possession, custody, or control *or* are known or could be known by the exercise of due diligence to exist by the government. This reading is too broad.

---

[8] The district court did not discuss the scope of the Standing Order vis-à-vis Rule 16.

While Rule 16 is "intended to prescribe the minimum amount of discovery" and is "not intended to limit the judge's discretion to order broader discovery in appropriate cases," *see* Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment, the interpretation of the Standing Order suggested by the defendants-appellees would require us to read into it the word "or" before that final clause, thereby greatly expanding the scope of the obligation imposed by the Standing Order. We decline to do so and instead interpret the Standing Order based on its plain meaning: The additional clause in the Standing Order should be read to modify the preceding clause, not add to it.

Moreover, if we were to accept the defendants-appellees' interpretation of the Standing Order, the government's obligation to acquire and produce evidence would be impossibly broad. The government would violate the Standing Order any time it *could* have expended resources to track down a piece of evidence it might want to utilize in its case-in-chief, despite the fact that it may not have known or suspected that such a piece of evidence existed. We conclude that the government did not violate the Standing Order.

## CONCLUSION

We have considered the parties' remaining arguments on appeal and

conclude that they are without merit. For the reasons explained above, we

REVERSE the district court's order and REMAND for further proceedings

consistent with this opinion.